## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**DIANE FISHER,**                               )
                                                )
       Plaintiff,                          )
                                                )
       v.                                  )      2:07cv1355
                                                )      **Electronic Filing**
**MICHAEL J. ASTRUE,**                          )
**COMMISSIONER OF SOCIAL**                       )
**SECURITY**,                                    )
                                                )
       Defendant.                          )

## MEMORANDUM OPINION

March 31, 2009

### I.    INTRODUCTION

Plaintiff, Diane Fisher ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f. The parties have filed cross motions for summary judgment, and the record has been developed at the administrative level.

### II.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI benefits on June 6, 2005, alleging disability since May 19, 2005, due to chest pain, left arm pain, high blood pressure, depression, stress, and headaches. R. 57-59, 85, 412-414. Plaintiff's claims were initially denied, and she filed a timely request for an administrative hearing. R. 34-37, 38, 418-22. A hearing was held on March 20, 2007, in Johnstown, Pennsylvania, before Administrative Law Judge Patricia C. Henry ("ALJ"). R. 426-60. Plaintiff was represented by counsel, David J. Flowers, and an impartial Vocational Expert ("VE"), Timothy Mahler, also appeared and testified. *Id.* The ALJ issued an unfavorable decision on March 29, 2007, finding that the Plaintiff was "not disabled" within the meaning of the Social Security Act. R. 13-27. The ALJ's decision became the Commissioner's final decision when, on August 9, 2007, the Appeals Council denied Plaintiff's request for review. R. 5-8.

Plaintiff's administrative remedies thus being exhausted, she now brings the instant action seeking review of the Commissioner's final decision, and the matter is before this Court on the cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## III.  STATEMENT OF THE CASE[1]

Plaintiff was born on May 24, 1965. R. 57.  She is currently forty-three (43) years old, making her forty (40) years old at the time of application for benefits and forty-one (41) years old at the time of the administrative hearing. *Id*.  Under the Commissioner's regulations, applicants under the age of 50 are considered "younger individuals" and their age is not considered a significant impediment in their ability to acclimate to unfamiliar occupational circumstances. 20 C.F.R. § 416.963.

Plaintiff has a "limited education," having only completed the ninth grade, and her employment history reveals engaging in "semi-skilled" work as a home nursing attendant, nursing home assistant, and babysitter. R. 82, 103-09, 456-57.  Plaintiff discontinued working in May 2005 because she had a mini-stroke and the patient to whom she was providing care made the final transition. R. 432.  Plaintiff did not attempt to secure employment thereafter. *Id.*

Plaintiff began treating with her primary care physician, Cresencio W. Umali, M.D. ("Dr. Umali"), on July 18, 2001, when she presented with syncope and chest pain and epigastric pain. R. 156.  Dr. Umali also noted Plaintiff's medical history was significant for rheumatic fever. *Id.* The record for this visit does not indicate that Plaintiff suffers from migraine headaches. *Id.*  The first time Plaintiff reported a migraine headache to Dr. Umali was on August 22, 2001, when she indicated pain on the right side of the body with some ora noted, occasional neck pain but no blurring of vision, and no numbness or weakness of the arms or legs. R. 154.  The pain is described as being persistent, severe, and nonradiating. *Id.*  No other photophobia was noted and Plaintiff was advised to take Motrin and Advil for relief. *Id.*  Subsequently, Plaintiff reported

---

[1]Plaintiff's allegations of error are predicated, *in toto*, on the ALJ's findings with respect to her migraine headaches.  As such, the court will limit its recitation of the facts to those pertaining to that issue, except where background information may be considered necessary or helpful to the analysis.

migraine headaches to Dr. Umali on September 14, 2001, and December 17, 2001. R. 151, 153. On January 19, 2004, Plaintiff informed Dr. Umali that she has had some relief from her migraines with ibuprofen. R.144. The next time she reported a headache to Dr. Umali was on April 11, 2005, which she reported she had for the past three days. R.141.

Plaintiff presented to the Emergency Room of Indiana Regional Medical Center on May 9, 2005, complaining of a headache that had been persisting for three days. R. 133. Plaintiff denied neck or facial pain, and described the maximum severity of pain as moderate. *Id.* A CT scan of Plaintiff's head revealed no acute disease. R. 134. Plaintiff was instructed not to work that day. *Id.* During subsequent emergency room treatments Plaintiff reported a prior history of headaches or denied having headaches. R. 237-52. Plaintiff's neurological functioning was reported as normal at all emergency room visits. *Id.*

On August 3, 2005, J.J. Kowalski, M.D., a state agency physician, completed a psychiatric review technique form in which he concluded that Plaintiff had no severe mental impairment, but that she was mildly limited regarding concentration, persistence or pace and maintaining social functioning. R. 179-92.

Plaintiff's cardiologist, Edward P. McDowell, M.D., reported in February 2006 that Plaintiff reported experiencing terrible headaches as a result of taking Nitroglycerine for her chest pain. R. 201. Plaintiff's medication was changed, and she reported no side effects from the new medication. R. 195-205.

Plaintiff received treatment for depression and anxiety between August 2005 and May 2006 at the Community Guidance Center in Indiana, Pennsylvania. R. 206-29. Plaintiff reported at her initial psychological evaluation that she experienced minimal relief from her headaches with over-the-counter medications and nonsteroidal anti-inflammatory drugs. R. 210. William M. Cseh, M.D.("Dr. Cseh"), from the clinic, referred Plaintiff to a neurologist, Mihaela Mihaescu, M.D. ("Dr. Mihaescu"). R. 210. Dr. Cseh diagnosed Plaintiff with major depressive disorder and anxiety disorder, and prescribed Depakote and an increased dose of Paxil. R. 211.

In May 2006, Plaintiff reported to Dr. Mihaescu a history of headaches occurring over the past two years, rating their severity as eight out of ten. R. 410. Plaintiff indicated that she

3

took Tylenol for headaches, and Dr. Mihaescu noted Plaintiff took Depakote "for mood stabilization." R. 410. An MRI taken of Plaintiff's brain revealed no abnormalities. R. 290. Dr. Mihaescu instructed Plaintiff to stop using Tylenol, as that medication contributed to her headaches, and provided Plaintiff with a prescription for Neurontin. R. 411. Additionally, Dr. Mihaescu asked Plaintiff to keep a daily calendar of her headaches. R. 411. In July 2006, Plaintiff informed Dr. Mihaescu that she did not keep a daily calendar of her headaches and that she never started Neurontin because it was not approved by her insurance. R. 409. Plaintiff was provided a prescription for a Medrol pack by Dr. Mihaescu, who once again requested that Plaintiff keep a daily calendar documenting her headaches. *Id.*

In November 2005, Plaintiff's primary care physician became John Santarlas, M.D. ("Dr. Santarlas"). R. 326. Plaintiff reported one headache between November 2005 and February 2007 to Dr. Santarlas, which she attributed to Nitroglycerine, and Dr. Santarlas wrote her a prescription for medication. R. 298-327. No subsequent headaches were reported by Plaintiff and no additional headache medication was prescribed by Dr. Santarlas. R. 298-318. When Plaintiff's chest pain medicine was changed to Isodril Nitrate, Plaintiff likewise reported no headaches. R. 311. Dr. Santarlas' examinations revealed normal neurological functioning. R. 300-316.

Among the medications prescribed for Plaintiff is Depakote. R. 123, 125. Plaintiff provides inconsistent reasons for taking the medication, stating in 2005 that it was for headaches, and in 2007 claiming that it was for depression. *Id.*

At the administrative hearing, Plaintiff testified that she experienced "really super-bad headaches" when she took Nitroglycerine for her chest pain. R. 438.

According to Plaintiff's testimony, her daily activities consist, in the main, of watching ten hours of television per day. R. 450. Plaintiff testified that she is able to prepare simple meals and tries to do light housekeeping. R. 452-53.

The testimony of the VE indicated that a hypothetical individual sharing Plaintiff's restrictions and limitations could perform work existing in the national economy at the medium exertional level as a hand packer, dishwasher, laundry worker, or vehicle washer, at the light

exertional level as a laundry folder, labeler, marker, office cleaner, sorter or grader, or at the sedentary level as a waxer of glass products, inspector, checker, assembler of small products, sorter, or grader. R. 457-58.

After determining that Plaintiff had met the insured status requirements of the Act through March 31, 2009, and that Plaintiff had not engaged in substantial gainful activity since her protective filing, the ALJ found Plaintiff's hypertension, tachycardia, depression, and anxiety to be severe impairments within the meaning of the Regulations, but did not meet or medically equal, either singly or combination with other alleged impairments, any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations No. 4 (20 C.F.R. §§ 404.1520(d) and 416.920(d)). R. 15-18. The ALJ further found that Plaintiff's migraine headaches do not have more than a *de minimis* effect on Plaintiff's ability to perform basic work activities, and were therefore determined to be non-severe. R. 16. The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC")[2] to engage in work activity at the medium exertional level subject to certain modifications, which allow for limitations in postural movements, limitations in cognitive ability, production, persistence and pace, and limitations in social interaction. R. 18-25. Ultimately, the ALJ concluded that, although Plaintiff was unable to return to her past relevant work as a nurse's aide, a significant number of jobs existed in the national economy that Plaintiff could perform, considering her age, education, work experience and RFC, and therefore Plaintiff was not disabled within the meaning of the Act at any time relevant to the rendering of the ALJ's decision. R. 25-26.

## IV.    STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or

---

[2]Residual functional capacity is "what [the claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a).

re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents (her) from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if (her) physical or mental impairment or impairments are of such severity that (she) is not only unable to do (her) previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To support his ultimate findings, an ALJ must do more than state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and must provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. § 405(a), has developed a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

If at any step a finding of disability or non-disability can be made, the SSA

6

will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determined whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

## V.    DISCUSSION

Plaintiff's assignment of error to the ALJ's decision advances the argument that the ALJ rejected uncontradicted evidence that Plaintiff's migraine headaches are a "severe impairment" as contemplated by the Act, because that determination should be made not based upon whether the impairment is "disabling," but upon whether the evidence supports that the impairment has more than a minimal impact on Plaintiff's ability to perform work-related functions. Plaintiff contends that the ALJ's conclusion that Plaintiff's migraine headaches are not a severe impairment is founded upon improper evidentiary bases, specifically, the ALJ's findings that Depakote is not commonly used to treat migraines, and the record does not contain reference to frequent headaches. Plaintiff avers these findings are not supported by the evidence and required the ALJ to set her opinion against the uncontradicted medical opinions of Plaintiff's treating sources.

Plaintiff argues that the ALJ erred in finding that Plaintiff's migraine headaches are not severe at step two of the sequential evaluation, discussed above. Plaintiff argues that the severe impairment determination is a *de minimis* standard that is only designed to eliminate "groundless claims." Plaintiff maintains that an impairment is only non-severe when its effect on an

7

individual's ability to work is minimal or non-existent. Plaintiff further stresses that a

determination that an impairment is not severe should rarely be used as a basis for denying

benefits and that reasonable doubts as to severity should be resolved in the claimant's favor.

Plaintiff contends that a decision that an impairment is not severe at this step should be reviewed

with close scrutiny.

The Commissioner's position is that the ALJ's decision is supported by substantial

evidence.

Two principles guide the Court's inquiry. Initially, the Court observes that Plaintiff's

position consists of reiterating the evidence contained in the record and insisting that a different

result is warranted. That argument is rarely successful because the standard as to factual

determinations is highly deferential. As is by now practically axiomatic, a district court is bound

by the ALJ's findings so long as those findings are supported by substantial evidence, even if the

district court would have reached a different factual conclusion. *Hartranft*, 181 F.3d at 360.

Plaintiff supports her position by adverting that the ALJ's statements that Depakote is not

commonly used to treat migraine headaches and that the record does not contain reference to

frequent headaches are "patently false." The Court disagrees. With respect to Plaintiff's

prescription for Depakote, what the ALJ actually said was "the evidence does not reveal the

claimant has been taking any medication commonly associated with severe migraine headaches."

Whether Depakote is commonly associated with migraines or not, there is ample evidence in the

record that Plaintiff was prescribed Depakote, at least primarily, for her depression and anxiety.

As such, the Court finds no error with the ALJ's statement.

The ALJ's finding that the record does not contain reference to frequent ongoing

headaches is also supported by the evidence of record. A critical reading of the ALJ's decision

reveals that the ALJ did conduct a thorough review of the evidence in reaching her conclusion

and that the ALJ provided a comprehensive analysis of the evidence in making her

determination. Furthermore, the ALJ notes that the occurrence of the headaches was held in

abatement after identifying Nitroglycerine as their probable source. Additionally, nothing in the

record suggests that the headaches bore any impact on Plaintiff's ability to perform basic work

functions. Finally, an assignment of error to this finding would require the Court to re-weigh the evidence of record, which the Court is not empowered to do. *Monsour Medical Center*, 806 F.2d at 1190. Despite Plaintiff's insistence that the evidence mandates reaching the antipodean result, this Court does not conclude that the ALJ's finding lacks the support of substantial evidence. Nor can it be said that the result is unreasonable.

Secondly, the Court addresses Plaintiff's argument that the severe impairment determination is a *de minimis* standard that is only designed to eliminate "groundless claims." Plaintiff's argument, although true, is irrelevant in this case. The Regulations and the case law address the situation where benefits are denied at step two because an impairment is determined to be non-severe. Plaintiff's case, however, is readily distinguishable for the obvious reason that benefits were denied at step five of the sequential evaluation process, not at step two. The ALJ did find that Plaintiff had the severe impairments of hypertension, tachycardia, depression, and anxiety at step two, but found that Plaintiff's allegations of migraine headaches do not have more than a *de minimis* effect on Plaintiff's ability to perform basic work activities. The ALJ then thoroughly conducted the remaining steps of the evaluation process in reaching a determination that Plaintiff is not entitled to the benefits she seeks. This is fully in accordance with the Regulations and applicable case law. Although a finding that an impairment is not severe at step two resulting in a denial of benefits at that stage "is certain to raise a judicial eyebrow,"[3] merely finding that an alleged impairment lacks sufficient severity to be considered synchronously with other severe impairments in reaching a decision is not subject to the same level of lucubration, and the normal deferential standard applies. "The physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work." *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987)(citations omitted). Plaintiff bears the burden of proving her impairments are sufficiently severe to satisfy the standard. See *Id*. at 146 n. 5. This Plaintiff has failed to do. Plaintiff's medical records fail to indicate that Plaintiff's mental impairments significantly limit her ability to perform basic work

---

[3]*McCrea v. Commissioner*, 370 F.3d 357, 361(3d Cir. 2004).

activities. The ALJ's findings on this point, therefore, will not be disturbed on this appeal.

Plaintiff also emphasizes that the Commissioner failed to order a consultative examination of Plaintiff. The accident of that fact, however, is of no moment. The Regulations make clear that a consultative examination will only be ordered when sufficient medical evidence is not available from a claimant's existing medical sources. *See* 20 C.F.R. §§ 404.1512(f), 404.1517, 404.1519, 404.1519a-404.1519f. That is not the case here.

Finally, Plaintiff contends that the ALJ's failure to find Plaintiff's migraine headaches to be a severe impairment within the meaning of the regulations occasioned the validity of the hypothetical question to the VE to be compromised. Because the Court finds that the ALJ did not err in finding that Plaintiff's migraine headaches are not disabling, the Court need not address Plaintiff's allegation of error regarding the manner in which the ALJ postured the hypothetical questions to the VE.

## VI.    CONCLUSION

For all of the foregoing, the decision of the ALJ is affirmed, and the Commissioner's motion is granted. Plaintiff's motion is denied. An appropriate order shall issue.


                                        s/ David Stewart Cercone
_____         David Stewart Cercone
                                        United States District Judge


cc:    Karl E. Osterhout, Esquire
       1789 South Braddock Avenue, Suite 570
       Pittsburgh, Pennsylvania 15218

       Paul Kovac
       Assistant U.S. Attorney
       Western District of Pennsylvania
       U.S. Post Office & Courthouse
       700 Grant Street, Suite 4000
       Pittsburgh, Pennsylvania 15219